UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMBAC FINANCIAL SERVICES, LLC,

                       Plaintiff,

       -against-                                09 Civ. 7062 (RJH)

                                                 **MEMORANDUM OPINION**
BAY AREA TOLL AUTHORITY,                 **AND ORDER**

                       Defendant.

Richard J. Holwell, District Judge:

On August 5, 2010, Magistrate Judge Ronald L. Ellis issued a Memorandum and Order (the "Order") holding that Wisconsin privilege law applied to certain documents requested by defendant Bay Area Toll Authority ("BATA") and that plaintiff Ambac Financial Services ("AFS") had not waived the applicable privilege. BATA timely filed objections to the Order in this Court on August 18, 2010, asserting that (1) New York privilege law should have applied and (2) even assuming Wisconsin law applied, AFS had failed to carry its burden of demonstrating that the communications sought fell within the applicable privilege. For the reasons that follow, Judge Ellis's Order is AFFIRMED.

## BACKGROUND

### I. Substantive Claims

The First Amended Complaint (the "Complaint") alleges a single claim for breach of contract stemming from an interest-rate-swap agreement (the "Agreement") between AFS and BATA. (Compl. ¶¶ 1, 21-24.) Under the Agreement, one of the parties was obligated to pay a

1

lump sum upon early termination of the Agreement. The lump sum was to be calculated by the "Market Quotation" method, but if that quote was not obtained in good faith, the "Loss" method would be used. (*Id.* ¶ 12.) On July 22, 2009, BATA terminated the Agreement early. (*Id.* ¶ 13.) The next day, BATA determined that the proper amount to send to AFS was $104,579,900 using the Market Quotation method. (*Id.* ¶ 14.) The complaint alleges that this quotation was not obtained in good faith, and that the proper amount was to be calculated in accordance with the Loss method, resulting in an owed amount of $156,622,354. (*Id.* ¶¶ 15-17.) The single claim for relief seeks damages in excess of $50,000,000, the difference between the two amounts. (*Id.* ¶ 24.)

## II.    The Discovery Dispute

The instant dispute stems from BATA's Second Request for the Production of Documents (the "Request"), dated April 7, 2010. (Sills Decl. Ex. C.) The Request seeks various communications between AFS or its affiliates and Wisconsin's Office of the Commissioner of Insurance ("OCI"), including communications concerning (1) the value or method of valuation regarding any derivatives transactions to which AFS or its affiliates were a party; (2) any amounts due or paid to AFS or its affiliates in connection with derivatives transactions; (3) this action; and (4) AFS's "financial condition or the financial condition of [AFS's] affiliates." (*Id.*) The Request followed press reports that OCI was engaged in extensive regulatory supervision over Ambac Assurance Corporation ("Ambac"), AFS's Wisconsin-incorporated parent. (*See* Def.'s Objections at 2.) OCI engaged in this supervision because Ambac's business was experiencing significant actual and anticipated losses. In the course of its regulatory activities, OCI approved the creation of a segregated account for Ambac's most troubled financial guaranty insurance policies and successfully petitioned for an order directing the rehabilitation of the

segregated account under Wisconsin state law in Wisconsin state court.  (Affidavit of Kimberly A. Shaul dated August 2, 2010 ("First Shaul Affidavit") ¶ 5.)

On June 14, 2010, AFS informed OCI of the Request.  (*Id.* ¶ 8.)  Shortly afterwards, OCI informed Ambac and AFS that it believed that the requested communications were subject to OCI's privilege under Wis. Stat. § 601.465, which provides, in relevant part:

> The office may refuse to disclose and may prevent any other person from disclosing any of the following:
>
> (a) Testimony, reports, records and information that are obtained, produced or created in the course of an inquiry under § 601.42.
> (b) Except as provided in § 601.44(6) to (10), testimony, reports, records and information that are obtained, produced or created in the course of an examination under § 601.43.

Wis. Stat. § 601.465; (*see also* First Shaul Affidavit ¶ 9.)  OCI instructed Ambac and its affiliated entities not to disclose the requested communications via letter on June 29, 2010.  (First Shaul Affidavit ¶ 9.)

On July 15, 2010, BATA requested a conference with Judge Ellis concerning an anticipated motion to compel AFS to produce documents responsive to the Request.  (*See* Sills Decl. Ex. K.)  On July 23, 2010, AFS and OCI submitted letters asserting that BATA was not entitled to the requested discovery.  (*See* Sills Decl. Exs. L-M.)  BATA replied to AFS and OCI's letters on August 2, 2010.  (Sills Decl. Ex. N.)  Judge Ellis's Order, dated August 5, 2010, held that Wisconsin privilege law applied to the documents requested by BATA and that AFS had not waived the privilege.  *AMBAC Financial Services, LLC v. Bay Area Toll Authority*, No. 09 Civ. 7062 (RJH)(RLE), 2010 WL 3260146 (S.D.N.Y. Aug. 5, 2010).

**DISCUSSION**

### I. Standard of Review

Under the standard of review for a party's timely objection to a magistrate judge's order on a nondispositive pretrial matter, a district court will modify or set aside any part of the magistrate judge's order that it finds "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "Under this highly deferential standard of review, magistrates are afforded broad discretion in resolving [non-dispositive] disputes and reversal is appropriate only if their discretion is abused." *Margrabe v. Sexter & Warmflash, P.C.*, No. 07-cv-2798 (KMK)(GAY), 2009 WL 361830, at *3 (S.D.N.Y. Feb. 11, 2009) (internal quotation marks omitted). The reviewing court must be "left with the definite and firm conviction that a mistake has been committed" to overturn the magistrate judge's resolution of a nondispositive matter. *Beckles v. City of New York*, No. 08 Civ. 3687 (RJH)(JCF), 2010 WL 1841714, at *2 (S.D.N.Y. May 10, 2010).

### II. Choice of Law

"Federal district courts sitting in diversity cases apply the conflict of laws rules prevailing in the state in which they are situated." *Tartaglia v. Paul Revere Life Insurance Co.*, 948 F. Supp. 325, 326 (S.D.N.Y. 1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). "New York choice of law gives 'controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" *Id.* (quoting *Babcock v. Jackson*, 191 N.E.2d 279, 283-84 (N.Y. 1963)).

Applying this analysis, Judge Ellis found that "Wisconsin has the most significant relationship to these transactions because it regulates such communications, and has a right to

assert privilege concerning its own communications." *AMBAC*, 2010 WL 3260146, at *1. In contrast, "New York does not have a similar provision to protect the requested documents and communications." *Id.* Judge Ellis found that the "purpose behind the Wisconsin statute demonstrates why it has the most significant relationship to this particular transaction" and that "[t]he documents at issue are the embodiment of Wisconsin and OCI's interest in preserving its regulation of insurance." *Id.*

Because Ambac is a large insurer of municipal bonds, the Order went on to conclude that "an analysis of governmental interests is also appropriate." *Id.* at *2 (citing *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 22 (N.Y. App. Div. 2006)). Using the governmental-interests factors employed by *Foster Wheeler*, the Order found that "Wisconsin is the domicile of Ambac, and accordingly, Wisconsin law satisfies the governmental interest approach." *Id.* Furthermore, "since the documents requested deal directly with provisions regulated by OCI, Wisconsin has a greater interest in the regulation of its own provisions." *Id.* The Order could not "identify any interests which New York would have in regulating such provisions." *Id.*

BATA objects to Judge Ellis's conclusion, arguing that New York law, not Wisconsin law, should govern the question of privilege in this case. (Def.'s Objections at 10-15.) This objection has several pieces to it. First, BATA asserts that "a long line of Southern District authorities recogniz[e] that New York law governs privilege issues in diversity cases brought in this Court." (Def.'s Objections at 10.) BATA contends that "[u]nder those authorities, AFS' decision to sue BATA in this Court, combined with the fact that BATA seeks discovery from AFS in New York of documents that AFS presumably has available at its principal place of business in Manhattan, provide a sufficient basis to reverse the Order." (*Id.* at 11.)

Most of the cases BATA cites in support of this "long line" of authorities present circumstances not analogous to this case. *Elliott Assocs., L.P. v. Republic of Peru*, 176 F.R.D. 93 (S.D.N.Y. 1997) and *Drimmer v. Appleton*, 628 F. Supp. 1249 (S.D.N.Y. 1986), for example, both involve situations in which the court recognized that there was no dispute that New York law should apply. *Elliott Assocs.*, 176 F.R.D. at 96 ("[N]either party has argued that non-New York law should apply . . . ."); *Drimmer*, 628 F. Supp. at 1250 ("The presence of both of these factors in the case at bar makes it appropriate to determine the validity of this asserted privilege under New York law. This is the apparent conclusion of the parties, as they have briefed primarily New York State law of privilege."). Others, such as *Green v. Beer*, No. 06 Civ. 4156 (KMW)(JCF), 2010 WL 2653650 (S.D.N.Y. July 2, 2010), and *Financial Technologies International v. Smith*, No. 99 Civ. 9351 (GEL)(RLE), 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000), contain no discussion of the possibility of the law of any state other than New York applying. *See Green*, 2010 WL 2653650, at *1-2; *Financial Techs.*, 2000 WL 1855131, at *2. Another actually applied California's law of privilege, not New York's. *Cepeda v. Cohane*, 233 F. Supp. 465, 471 (S.D.N.Y. 1964) ("I am of the opinion . . . that it is the public policy of California . . . which should control . . . ."). Given the lack of similarity between BATA's cited cases and this case, the Court cannot say that a "long line" of authorities exists compelling a conclusion that the Order was clearly erroneous or contrary to law.

Second, BATA argues that "Judge Ellis committed clear error by . . . relying exclusively on *Foster Wheeler*—which does not address privilege issues at all." (Def.'s Objections at 11.) But Judge Ellis did not rely "exclusively" on *Foster Wheeler*. Instead, the Order first conducted a standard analysis under New York's "grouping of contacts" approach to choice-of-law questions to find that Wisconsin's interest in regulating "communications between OCI, Ambac,

6

and/or AFS," expressed through Wis. Stat. § 601.01, "demonstrated a more significant relationship to the documents requested" than New York's. *AMBAC*, 2010 WL 3260146, at *1. Only after that conclusion did Judge Ellis proceed to his *Foster Wheeler* analysis. *Id.* at *2. Even if the *Foster Wheeler* analysis is excluded from the Order entirely, Judge Ellis's grouping-of-contacts analysis remains. BATA must therefore show that this analysis was clearly erroneous to prevail. Its arguments on this point are addressed below.

Third, BATA relies heavily on *Condit v. Dunne*, 225 F.R.D. 100 (S.D.N.Y. 2004), to argue that Judge Ellis committed clear error by ignoring that "[e]ach of the *Condit* factors weighs in favor of the conclusion that New York has the greatest interest and that its law accordingly applies here." (*See* Def.'s Objections at 12-13.) *Condit* itself, however, did not use the "factors" that BATA urges the Court to employ here. Instead, in performing its conflicts analysis, *Condit* "looked at whether the person asserting the privilege would have reasonably expected the privilege to apply in a New York court." *Condit*, 225 F.R.D. at 109. Although BATA correctly points out in its reply that "the holder of the claimed privilege . . . was the non-New York plaintiff," and that the *Condit* court nevertheless chose to apply New York law, (Def.'s Reply at 5-6), the rationale in that case was the lack of any factual connection California had with the communications alleged to be privileged. *See Condit*, 225 F.R.D. at 109. It was unreasonable, therefore, for the plaintiff there to expect that California's privacy privilege would protect his communications. Here, Wisconsin has more of a factual connection to the communications at issue. BATA requests communications between OCI, a Wisconsin state agency, Ambac, a Wisconsin corporation, and Ambac's affiliate AFS, connected with regulation and rehabilitation ordered by a Wisconsin state court under Wisconsin state law. *Condit* therefore hardly compels a conclusion of clear error.

Finally, BATA's most substantive argument contends that Wisconsin's interest in the documents at issue either does not exist or is outweighed by New York's interest in full disclosure. (Def.'s Opposition at 14.) To prevail on this argument, BATA must show that "the outcome of the balancing test clearly indicates that the Order was erroneous." *Fundacion Museo de Arte Contemporaneo de Caracas – Sofia Imber v. CBI-TDB Union Bancaire Privee*, No. 93 Civ. 6870 (PKL), 1996 WL 243431, at *1 (S.D.N.Y. Feb. 9, 1996). BATA argues that "there is no conceivable public interest in allowing AFS . . . to make one representation about the value of the [interest-rate swaps at issue in this case] to a governmental agency in Wisconsin and a different representation about the valuation in proceedings it initiated before this Court." (Def.'s Objections at 14; *see* Def's Reply at 6.) This, however, is speculation and assumes that such contradictory representations actually exist. Furthermore, the Request is not limited to communications regarding the interest-rate swaps in this case. It broadly seeks communications between OCI and Ambac or AFS about Ambac's financial condition, payments received in connection with the termination of *any* derivatives transaction, and Ambac or AFS's valuations of *any* derivatives transactions in which they have been involved. (*See* Sills Decl. Ex. C.) Moreover, the Order did not hold that Wisconsin's interest was one in encouraging double-faced dishonesty. Rather, Judge Ellis found that Wisconsin's interest was best expressed through Wis. Stat. § 601.01, which provides that "the purpose of the privilege is to (1) ensure the solidity of all insurers doing business in [the] state; (2) ensure that the state has an adequate and healthy insurance market, characterized by competitive conditions and the exercise of initiative; (3) improve and thereby preserve state regulation of insurance; and (4) encourage self-regulation of the insurance enterprise." *AMBAC*, 2010 WL 3260146, at *1. Wisconsin undeniably has *some* interest in the application of its privilege law in this case.

BATA also objects that "while Magistrate Judge Ellis concluded that '[t]he documents at issue are the embodiment of Wisconsin and OCI's interest in preserving its regulation of insurance,' the Order did not explain why this is the case." (Def.'s Objections at 14 (quoting *AMBAC*, 2010 WL 3260146, at *1).) But Judge Ellis's conclusion is not so esoteric as to require a lengthy explanation. Given that OCI serves as rehabilitator in the Wisconsin proceedings regarding Ambac's rehabilitation, it is not especially difficult to infer, as OCI points out, that "Wisconsin has an especially strong interest in seeing that communications with Ambac and other insurers are not chilled by the possibility of forced disclosure in collateral litigation." (Intervenor's Opp'n at 9.) BATA's own brief asserts that the Request was inspired by reports of OCI's regulation of Ambac. (*See* Def.'s Objections at 4.) The Court cannot say, therefore, that Judge Ellis's conclusion regarding Wisconsin's interest in asserting its privilege is clearly erroneous.

BATA further faults the Order for failing "to balance [Wisconsin's interest] against New York's interest in full disclosure." (Def.'s Objections at 14.) Even if Judge Ellis had explicitly done so, however, it is not clear that the result would have been any different.[1] The cases BATA cites indicate that New York has a "strong public policy favoring full disclosure," *see, e.g.*, *Spectrum Systems Int'l Corp. v. Chemical Bank*, 157 A.D.2d 444, 447 (N.Y. App. Div. 1990), but also note that "[c]ertain matter is not discoverable," including "[p]rivileged matter, attorney's work product, and material prepared for litigation." *Gray v. City of New York*, 19 Misc. 3d 1117(A) (N.Y. Sup. Ct. 2008). New York's policy, then, is not absolute, and BATA cites no case specifically indicating that other states' privileges, such as the one at issue here, must yield to the policy. Given Wisconsin's interest in applying its law, and the uncertainty of whether

---

[1] It should be noted that BATA did not raise the argument about New York's "strong public policy" before Judge Ellis. (*See* Sills Decl. Exs. K, N.)

New York's public policy outweighs that interest, the Court does not conclude that Judge Ellis erred in applying Wisconsin's privilege law to this matter. BATA has not shown that the balance would clearly tip to New York in the grouping-of-contacts test.

### III. Application of the Wisconsin Privilege Law

BATA's second set of objections asserts that AFS and OCI failed to carry their burden to establish that the requested documents are covered by Wisconsin privilege law. The main thrust of BATA's argument on this point is that neither AFS nor OCI made a particularized showing of how and why the requested documents fall under Wis. Stat. § 601.465. (Def.'s Objections 15-16; Def's Reply 7-10.)

Judge Ellis was within his discretion to find that AFS and OCI had carried their burden in this case. OCI's letter to Judge Ellis plainly stated that "OCI had no reason to communicate with AFS, and did not, other than for purposes of its inquiries and examination of Ambac." (Sills Decl. Ex. M.) The First Shaul Affidavit also stated that "all of OCI's communications with Ambac-related companies related to OCI's ongoing examination of Ambac's financial health, the exercise of OCI's regulatory duties, and its decision to approve and place [Ambac's] Segregated Account in rehabilitation." (First Shaul Affidavit ¶ 7.) BATA's objection as to the sufficiency of AFS and OCI's evidence regarding its assertion of privilege is also belied by the Request's timing and content, as it sought communications that would likely have been gathered in the course of an OCI inquiry or examination after press reports of OCI's regulatory activities. (*See* Def.'s Objections at 2; Sills Decl. Ex. C.)

The remainder of BATA's objections on this point harp on semantics. For example, BATA objects that "Wis. Stat. § 610.465 . . . plainly does not permit the OCI to assert a privilege as to all communications to which it is a party made in 'the exercise of OCI's regulatory duties.'

Indeed, such a reading of the statute would appear to cover everything that the OCI does." (Def.'s Objections at 16 (quoting First Shaul Affidavit ¶ 7).) That reading of the First Shaul Affidavit is a bit disingenuous; that statement, read in context, clearly applies to OCI's regulation of Ambac and the inquiries and examinations associated with its rehabilitation of Ambac, not to OCI's activities more generally. (*See* First Shaul Affidavit ¶ 7.) BATA also asserts that Shaul contradicts the First Shaul Affidavit in a second affidavit dated September 1, 2010 (the "Second Shaul Affidavit") because she asserted that the requested documents relate to an "examination" in the First Shaul Affidavit, but to an "inquiry" in the Second Shaul Affidavit. (Def.'s Reply at 2-3.) But the Court cannot find clear error for an affiant's failure to mention talismanic language. Moreover, the First Shaul Affidavit did intimate that "inquiries" were part of OCI's dealings with Ambac. (*See* First Shaul Affidavit ¶ 7.)

In short, although Judge Ellis's analysis regarding both the choice and the application of Wisconsin law might not have addressed every point that BATA wished that it had, BATA has failed to carry the "heavy burden" it bears in seeking to overturn a magistrate judge's order. *See In re Natural Gas Commodities Litigation*, 235 F.R.D. 241, 244 (S.D.N.Y. 2006). Judge Ellis was well within his considerable discretion to apply Wisconsin privilege law to the documents in dispute.

## CONCLUSION

For the foregoing reasons, Judge Ellis's Memorandum and Order [30] is AFFIRMED, and BATA's Objections [31] are DENIED.

SO ORDERED.

Dated:     November 30, 2010
           New York, New York

                                    _____
                                    RICHARD J. HOLWELL
                                    UNITED STATES DISTRICT JUDGE